## J. G. GARVIN ET AL. V. MATILDA HALL ET AL.

### No. 3161.

1. **Transfer of Judgment—Form of Execution After Transfer.**—A judgment may be transferred by parol. It must, however, be enforced in the name of the original plaintiff, and it seems that this would be permitted after the death of the plaintiff.

2. **Tender of Property in Litigation After Judgment — Costs Not Being Paid.**—Judgment was rendered for plaintiff for a horse adjudged worth $100, and costs of suit. A tender of the horse by defendant and refusal by plaintiff did not satisfy the judgment, so as to render an execution void.

3. **Fraudulent Sale Under Execution.**—See facts held sufficient to show a fraudulent combination to acquire title to a city lot through form of sale under execution.

4. **Direct Attack Against Sheriff's Sale for Fraud, etc.**—Suit was brought within less than four years after the sale for the recovery of the city lot sold, and setting up facts upon which the invalidity of the sheriff's sale under which the defend-

ants held was manifest. In such case it is not necessary to hold that a first execution issued more than nine years after the judgment, and several years after the death of the plaintiff, but in his name, was void. In direct attack it was voidable.

5. **Same — Limitation.** —Suit brought to avoid a fraudulent sheriff sale brought within four years from date of the sale is not a stale demand.

APPEAL from Dallas. Tried below before Hon. DUDLEY G. WOOTEN, Special District Judge.

The opinion states the case.

*S. P. Morris* and *Word & Reeves,* for plaintiffs in error.—1. The issuance of a writ of execution on a dormant judgment renders the writ voidable; the execution of the writ cures the defect, and the title of the purchaser is not affected thereby. Sydnor v. Roberts, 13 Texas, 619; Hancock v. Metz, 15 Texas, 205; Hawley v. Bullock, 29 Texas, 216; Andrews v. Richardson, 21 Texas, 287; The Meader Co. v. Aringdale, 58 Texas, 451; 2 Freem. on Ex., 2 ed., sec. 29.

2. The issuance of an execution in the name of the judgment creditor after his death renders the writ voidable, and does not affect the title of the purchaser of land sold under the writ. Jenness v. Circuit Judge, 42 Mich., 469; Freem. on Ex., 2 ed., sec. 35.

3. If it be conceded that the tender of the horse operated as a satisfaction of the judgment for the horse, an execution could still issue for the costs remaining unpaid; and erroneously including in the execution the part of the judgment that has been paid would at most render the writ voidable, and not void. Hughes v. Driver, 50 Texas, 175.

4. The Revised Statutes make no provision for the issuance of an execution after the death of a sole plaintiff, when applied for by his heir or assignee. The court in this finding doubtless had reference to article 2272, Revised Statutes. This article was intended to regulate the issuance of an execution when applied for by an executor or administrator. Williams v. Ball, 52 Texas, 611; Hunt v. Loucks, 38 Cal., 379.

*Coombes & Gano,* for defendants in error.—1. An existing judgment is a necessary basis for the execution; and where one is paid or satisfied in any way the power of the clerk to issue ceases to exist, and not even a bona fide purchaser could be protected under such an execution. The tender of the horse in this case deprived the clerk of the power to issue an execution for money. Freem. on Ex., sec. 19; Craft v. Merrell, 14 N. Y., 456; Durette v. Briggs, 47 Mo., 361.

2. In direct proceedings against purchasers to set aside a sale, it is unnecessary to make the plaintiff in execution or any other than the present purchasers at interest party to the suit where the purchase money is tendered. Weaver v. Nugent, 72 Texas, 277.

3. An execution issued upon a dormant judgment is merely voidable, but may be attacked in the hands of persons who are not bona fide purchasers. Freem. on Ex., sec. 342; Sydnor v. Roberts, 13 Texas, 616; Morris v. Hastings, 70 Texas, 26.

4. A sale under an execution issued against a defendant whose death occurs after a judgment and before execution, is void, because the power to issue is wanting. Hooper v. Caruthers, 78 Texas, 432; Coran v. Pittenger, 92 Ill., 244; Erwin's Lessee v. Dunders, 4 How., 58; Mitchell v. St. Maxent, 4 Wall., 237. So also a sale under an execution issued in name of plaintiff whose death occurs after judgment and before execution, is void. Rev. Stats., art. 2272; Fowler v. Burdett, 20 Texas, 34; Brown v. Parker, 15 Ill., 357; Myer v. Antome, 106 Ill., 420; Miller v. Doan, 19 Mo., 65; Stewart v. Nuckells, 15 Ala., 231.

5. As a rule, in those States where issuance of execution after defendant's death is held void, issuance of execution after plaintiff's death is held void; and in those States where the former is held valid, the latter is held valid. In Texas the former is held void, and the latter should be. Freem. on Ex., sec. 35.

GARRETT, PRESIDING JUDGE, *Section B.*—This suit was brought October 5, 1886, in the District Court of Dallas County, by the appellees Matilda Hall and others, the widow and heirs of H. H. Hall, deceased, against J. G. Garvin and John Weekly, for the recovery of certain premises situated in the city of Dallas. It was in form of trespass to try title, but the petition contained also allegations impeaching the validity of the execution by virtue of which the defendants acquired their title, which was at execution sale, and charged that there was no valid judgment in existence, and that the execution was illegally issued. There was a prayer for restitution of the premises, and for general and equitable relief. The petition was indorsed as in trespass to try title.

On September 7, 1887, plaintiffs filed their first amended original petition, and made the appellants T. A. West and E. L. West additional parties defendant. In this pleading the allegations with respect to the judgment and execution were the same as in the original petition.

On July 10, 1889, plaintiffs filed their second amended original petition, in which the averments with respect to the defendants' title by virtue of the execution sale are much fuller. They are: "That defendants claim plaintiffs' said land under a pretended sale thereof by virtue of an execution alleged to have been issued out of the Dallas District Court on a judgment therein in favor of one Nick Powell and against H. H. Hall. Plaintiffs aver and charge, that if any such execution ever issued out of said District Court it was issued without any judgment upon which to base it, and at a time when the judgment upon which it was attempted to be issued was no longer in force; that

the judgment upon which the said execution was attempted to be issued was not of such character as to support such an execution; that such pretended and illegal execution was not issued until long after the plaintiff to said judgment, Nick Powell, was dead; and no execution whatever was issued on said judgment until after nine years from its date; that at the time said execution was issued there was no valid judgment in existence, and same, if ever issued, was issued without the consent or authority, direct or indirect, of the plaintiff or his attorneys; that no parties plaintiff were ever made to said judgment after the death of said Nick Powell, and said pretended execution issued in his name; that the said pretended execution was fraudulently procured to be issued by the defendants and purchasers under said execution with full knowledge of foregoing facts, and that said defendants are in no sense innocent purchasers for value. Plaintiffs deny that any consideration was paid by defendants or any one for said land; but in case it should be decided that something was paid, the plaintiffs charge that the rents due by defendants more than equal the amounts paid out with interest thereon, and ask that such amounts be so cancelled by portion of said rents, should it be held that plaintiffs must pay such amounts; and in case that (this relief is) refused, the plaintiffs allege that they are ready to pay such amounts into court, and ask decree protecting their interests in this respect." Plaintiffs prayed "judgment for restitution of the above described premises, and for their damages, their costs of suit in this behalf expended, and for general and special relief," etc.

Defendants' general and special exceptions were overruled, and they went to trial on pleas of not guilty, general denial, and special pleas of purchase in good faith for value, and improvements made in good faith; that the Powell judgment had been transferred to one Bratcher before issuance of execution; Hall's knowledge of issuance and levy of execution and sale thereunder; and that more than two years had elapsed since the sale of the land under said execution and the recording of the purchaser's deed before the institution of the suit; and that plaintiffs were barred and estopped from attacking said sale; and that the said plaintiffs had been guilty of gross laches in asserting their claim to said land, and that their demand was stale.

Trial was had before the court without a jury, and judgment was rendered in favor of the plaintiffs for the recovery of the land sued for. The court held, that the Wests bought with notice of the illegality of the sale, but required the plaintiffs to refund the purchase money paid by them to their codefendants and payment for improvements; but offset the same with ground rent. The defendants J. G. Garvin, T. A. West, and E. L. West have brought the case before the Supreme Court by writ of error.

The judgment upon which the execution sale was based was rendered in the District Court of Dallas County, June 5, 1874, in No. 1273, Nick Powell v. H. H. Hall, for a horse valued at $100 and costs of suit, which amounted to more than that sum, and in the event that the horse could not be had that execution issue. Hall perfected an appeal to the Supreme Court, but it was never finally prosecuted, and about one year after judgment he tendered the horse to Powell's attorney in the suit as satisfaction of the judgment for the horse; but the attorney refused to receive it, because, as he declared, "it was worthless and no account." Nick Powell, the plaintiff in the suit, died in 1878 or 1879. No execution was ever issued upon the judgment until February 16, 1884, and it was by virtue of this execution that the lot of land in controversy was sold on the first Tuesday in April, 1884, when one S. T. Ruddle became the purchaser for $11.50, and a deed was executed to him by the sheriff. On the same day Ruddle conveyed the land to one Wentworth Manning and the defendant J. G. Garvin for consideration recited in the deed of $200. Afterward Manning conveyed to Mrs. E. L. West.

One W. P. Bratcher testified on the trial, that Nick Powell had transferred the judgment to him, whether by parol or in writing he did not remember; and that in the fall of 1883 he had employed Manning to obtain an execution and have it levied, and if possible to make his money. At the time of the sale the lot was worth $750. It does not appear that any administration was ever had of Nick Powell's estate, and it was not shown that an affidavit of Powell's death was. made to obtain an execution. H. H. Hall, the defendant in the case of Powell v. Hall, died June 29, 1886, and the plaintiffs are his widow and heirs.

The court found, in effect and substantially, that there was no legal ownership of the judgment in W. P. Bratcher, nor any authority in him or in Manning to have the execution issued and enforced in Powell's name; that the consideration recited in the conveyance from Ruddle, the purchaser at the sheriff's sale, to Garvin and Manning, of $200, was fictitious and nominal; that Ruddle was acting for Garvin and Manning and under the latter's instructions in the purchase; that Garvin, Manning, Ruddle, and the Wests had notice of the vices in the sale; that Manning procured the issuance of the execution for himself and Garvin; and that the rental value of the property was $12.50 per month from the time of the sale. These findings of the court are questioned by several assignments of error, which need not be noticed in detail.

While it is not material to the disposition of the case whether Bratcher owned the Powell judgment or not, still we think the court was in error in finding that he was not the owner; for he testified, that the judgment had been transferred to him by Nick Powell for a consideration, which he stated, and he was in nowise impeached, discredited, or contradicted; consequently his testimony must be accepted as true. A judgment may

be transferred by parol, but it must be enforced in the name of the original plaintiff, which was sought to be done in this case. Freem. on Judg., secs. 421, 422; 2 Black on Judg., secs. 940, 945.

With respect to the other facts which have been questioned, we think that they are sufficiently supported by the evidence to prevent their disturbance by us. It appeared that Garvin and Manning wanted the lot. Manning had made an effort to get a quitclaim for it from Hall, but he declined to give one. Garvin and Manning said they intended to have it. Manning said he would sell it under the Powell judgment. Manning wanted the witness Cullen to go in with him, but upon information to them from Stemmons, who had been Powell's attorney, that the title would not be good, Cullen declined. Manning and Garvin were together several times in the office of Cullen before the sale. Manning said he would either buy it or have some one else to buy it for him. Garvin was at the sale when Ruddle bought. Ruddle made the only bid, which was $11.50, for land worth $750; and on the same day executed a deed therefor to Manning and Garvin, both of whom appear to have attended the sale. Cullen testified, that he told West before his purchase that the sheriff's sale was void. The evidence shows that there was a conspiracy between Garvin and Manning to acquire title to the lot, and that Ruddle was a mere vehicle; and that West, the husband of Mrs. E. L. West, had notice of the defect in the title before his purchase. Hall thought he had already conveyed the lot with other property, and refused to give a quitclaim to it to Garvin and Manning when requested to do so by them. There is no pretense that the conveyance was desired in settlement of the Powell judgment, but it would seem that the judgment was used to procure title for Garvin and Manning, when they failed to get through Hall. It is immaterial that the court's finding that the ground rent was $12.50 should not be supported by the evidence, because a finding at $10 would have been sufficient to offset the improvements; and West was probably not entitled to improvements.

It will not be necessary to inquire whether the tender of the horse to Powell's attorney was a satisfaction of the judgment so that it would not support an execution, for it appears that there were unpaid costs amounting to more than $100, which we think would support an execution if not otherwise irregular or invalid.

The court below held, that the execution by virtue of which the land in controversy was sold was void and would not support a sale thereunder, because at the time of its issuance the plaintiff in judgment was dead. But it is not necessary to a disposition of the case that we should pass upon that question, for the plaintiffs made a direct attack upon the execution, and in the absence of a special exception the pleadings were sufficient to set aside the sale for irregularity. The action is in effect a suit to set aside the execution sale and for the recovery of the

land, and the pleadings made the setting aside of the sale the gist of the action. If the suit had been one of naked trespass to try title, still it would have been necessary to attack and set aside the sale in order to recover; this would have been a collateral attack, and in order to authorize such an attack the execution must have been void and the sale a nullity. The pleadings, however, make a direct attack upon the execution and sale, and the facts showing the irregularity of the execution and the fraud attending the sale are substantially alleged, at least sufficiently so to be good on general demurrer, and to admit of evidence attacking the execution and the sale. It is charged that the execution was fraudulently issued, and that no consideration was paid for the land. From the evidence, it appears that there was a combination to issue the execution and sell the property for the purpose of buying it in, which amounted to a fraud upon the rights of the defendant in execution; and it was shown that property worth $750 was sold for $11.50. The circumstances attending the sale, added to the inadequacy of price, are abundantly sufficient cause for setting it aside. It is true that the special prayer for relief is for the restitution of the premises; but there was an offer to refund the purchase money, and a prayer for general and special relief, which we think would entitle the plaintiffs to have judgment setting aside the sale and for recovery of the lands as the result thereof. "Although the plaintiffs in their special prayer may have mistaken the relief to which they were entitled, in response to the prayer for general relief they may be awarded the relief to which the pleadings and the evidence may entitle them." Silberberg v. Pearson, 75 Texas, 288; Trammell v. Watson, 25 Texas Sup., 216.

It is urged by the defendants that their defense of laches and estoppel arising from the delay of the plaintiffs in bringing their suit to set aside the execution sale should have been sustained. The sale was made April 1, 1884, and the suit was originally brought against Garvin and Weekly, October 5, 1886. Defendants T. A. West and his wife E. L. West were made parties defendant by the amendment filed September 7, 1887. As before stated, we believe that the original petition was a direct attack upon the sale, and it was filed less than three years after the sale was made, and the Wests were brought in within less than four years. It has been generally held that such actions must be brought within a reasonable time. Our Revised Statutes provide, however, that "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued." Art. 3207. This statute may not apply to this case, but we think that by analogy to the statute the action was brought at least within a reasonable time, and that the plaintiffs' action is not a stale demand, and should not be held to be estopped or barred. If, however, it should be treated as an

action for the land, the five years statute would apply, because the deed is not such as would support color of title, for it is wanting in intrinsic fairness, and the suit would still be in time.   Rev. Stats., art. 3192.

We conclude that the judgment of the court below is right, and that the same should be affirmed.

*Affirmed.*

Adopted February 9, 1892.

A motion for rehearing was refused.