## EPPENAUER v. HOFFMANN et al.
### No. 1710.

Court of Civil Appeals of Texas. Eastland.

March 4, 1938.

Turner, Seaberry & Springer, of Eastland, for appellant.

Sayles & Sayles, of Abilene, for appellees.

LESLIE, Chief Justice.

Hoffmann & Page sued A. R. Eppenauer to recover $695.70, etc., the agreed purchase price of 773 feet of 10-inch pipe line; $350 rental for the same, for a certain period of time; and $46.38 damages to some 8-inch pipe obtained from the plaintiffs by the defendant, etc.

The appellant, Eppenauer, filed his plea of privilege to be sued in Tom Green county. This was controverted and venue was sought to be retained in Eastland county under exception 5 to the general venue statute, article 1995, R.S.1925. The plea of privilege was passed to be tried

with the case and was overruled. The judgment in the main cause, after allowing offset in favor of defendant, was for $542.-08. Defendant appeals.

The case was tried before the court without a jury and is before this court on findings of fact and conclusions of law, as well as a statement of facts. The venue question is the first presented.

The plaintiffs, Hoffmann & Page, are designated in the written contract as the "first party" and Eppenauer the "second party." The contract forming the basis of this suit and venue plea states that the second party being desirous of obtaining from first party certain pipe in connection with the drilling of an oil well, the parties agree and covenant (in part) as follows:

"In the event of a dry hole or nonproducing well on the Shields estate well No. 1 of second party in Coleman County, Texas, said casing is to be withdrawn from said well at the expense of second party and racked either at the location of said well or near the tenant house on said farm, this point to be determined by first party.

"In the event that it may be necessary, either through choice of second party or as a result of inability to salvage, for any reason whatsoever, second party has the privilege and in such event does hereby bind and obligate itself to pay first party for any such casing either retained, lost or damaged for the full amount thereof based upon the following scale:" 90 cents per foot for 10-inch casing, 60 cents per foot for 8¼-inch casing, and 75 cents for 6⅝-inch casing.

"It is likewise agreed that any pipe which may be withdrawn and found to be defective as a result of line cuts, damaged threads, or collars, or in a collapsed condition is to be paid for by second party in like manner and at the rates above prescribed, such payment to be made at the office of C. W. Hoffmann and K. F. Page at Eastland, Texas, within thirty days after the determination of such liability. * * *

"Second party is to proceed with the drilling of said well in a diligent and expeditious manner in order that said casing may be delivered back to first party with a minimum of delay.

"In consideration for which, the second party has upon this date assigned to first party, in full and complete payment for the use of said casing, the oil and gas lease covering seventy-five (75) acres of Mrs. Cornelia Cochran Lease, described as follows: * * * which assignment of oil and gas lease is accepted and acknowledged as full and complete payment for the use of said casing, but not for any damage or loss, which latter is provided for hereinabove."

It is the appellant's contention that the appellees, by their controverting affidavit, are seeking to hold the venue of this case in Eastland county on one ground, namely, that the provision of the contract, providing payment for the 10-inch casing, also provides for the payment of that amount in Eastland county, whereas that provision of the contract makes no such requirement and venue is therefore not governed by subdivision 5 of article 1995. In this contention, as to that particular provision, the appellant is correct, but there is another provision of the contract, relating to damaged threads, collars, etc., stipulating for the payment of such damages to be made in Eastland county, Tex., and appellees contend they sue for these items, rendering exception 5 applicable. In making the above contention, the appellant proceeds upon the "theory (appellees) do not sue for any damages to pipe * * *" stipulated for in other provisions of the contract. After a careful consideration of the pleadings and for reasons hereinafter stated, we conclude that the appellees do sue for the item of damage to the 8-inch pipe.

This conclusion, if correct, is determinative of any venue question presented by the appeal and is material upon other issues arising out of the trial on the merits. In this view it becomes unnecessary to determine whether the written contract construed as a whole provides for payment to the appellees in Eastland county for both the 10-inch casing and the damages to the 8-inch pipe, for certain it is, this latter item of damage ($46.38) sought to be recovered, constituting a part of the appellees' cause of action, and that amount unquestionably being payable in Eastland county, that fact fixed the venue in said county under said exception 5, and the following authorities: Middlebrook v. David Bradley Mfg. Co., 86 Tex. 706, 26 S.W. 935; Stevens v. Wilson, 120 Tex. 584, 39 S.W.2d 1088; Warner v. Gohlman, Lester & Co., Tex. Com.App., 298 S.W. 890, 891; C. & S. Sporting Goods Co. v. Brady Ind. School Dist., Tex.Civ.App., 54 S.W.2d 1033; 43

Tex.Jur. 771, §§ 51, 52; Wolcott v. Hall, Tex.Civ.App., 111 S.W.2d 1140.

■ We further state our reasons for so holding. Plaintiffs sued for this $46.38 item of damage, alleging with reference thereto the following:

"Plaintiffs further show to the court that thereafter and in due time and in accordance with said contract the defendant did return to plaintiffs said string·of 8¼ inch casing, but that one twenty foot joint of said 8¼ inch casing, was damaged and made valueless, by the defendant ·as a result of line cuts and to plaintiffs' damage in the agreed sum of $18.00; and that 17 joints of said 8¼ inch casing was damaged by the defendant in that the threads on such casing and couplings were stripped and battered to such an extent that the same could not be used and it became necessary to so repair such casing by rethreading the same at and for the reasonable, usual and customary cost and charge of $24.30; and said defendant failed to return to plaintiffs two of said 8¼ casing couplings of the actual market value of $4.08, and for which damages to said casing by virtue of said line cuts and said damages to the threads and couplings the defendant became liable to plaintiffs in the total sum of $46.38."

It is true, the plaintiffs elsewhere in their pleadings prayed for judgment for $695.-70, the amount to which they claimed they were entitled by reason of 10-inch casing not returned. But in that same connection, they prayed for "interest, costs of suit, and for such other and further relief, special and general, in law and in equity, that they may show themselves entitled to," etc.

When the contemplated well was completed for which the use of the casing was engaged, further use of the casing was permitted under a new arrangement between the parties hereafter to be noticed. Concerning the damages amounting to $46.-38, and the reasonable value of the additional use or rent of the 10-inch casing, the plaintiffs alleged:

"That after the defendant [Eppenauer] had so completed his said well on or about June 1, 1934, he advised plaintiffs that he desired to retain the use of the 10 inch casing then situated in his said well at and on a rental basis and promised and agreed to pay the plaintiffs the reasonable and customary amount of rentals for the additional use, after the completion of said well, of such ·10 inch casing. That said defendant has continued to so use said 10 inch casing and that the reasonable and.customary rental value of said casing for ·and during said time was $350 and which became due and payable to plaintiffs in addition to the agreed value of said casing which became returnable to the plaintiffs on or about June, 1, 1934.

"In this connection plaintiffs further show to the court that on or about the 20th day of September 1934, plaintiffs and the defendant entered into an oral contract and agreement wherein and whereby it was agreed between said parties that the plaintiffs could use some of the defendant's waste gas from his said well in the drilling of a well by said plaintiffs on an adjoining lease and that thereafter the plaintiffs did use some of the defendant's waste gas for a total period of 55 days, and it was further contracted and agreed between such parties that the plaintiffs use of such gas was in reciprocation of and as an offset to the plaintiffs' rental claims and damages due by the defendant for the continued use of and rental value of said string of 10 inch casing *and in cancellation of all damages to said 8¼ inch casing,* and in this further connection plaintiffs say that in the event the court should find that the plaintiffs are mistaken as to any valid contract having been entered into by and between the plaintiffs and the defendant as to the offset of the value of said waste gas used by the plaintiffs as against plaintiffs said rental charge and *damages* as hereinabove alleged, then your plaintiffs allege that the reasonable value of said waste gas so used by them is and was of less value than the rental value of said 10 inch casing, *and the amount of said damages to said 8 inch casing,* due by the defendant to plaintiffs but that they are nevertheless willing to allow and here now allow the same as a full and complete offset to and in full discharge and payment of all said rentals and damages and that said defendant after being allowed as a credit and given due credit for the full value of all waste gas used by the plaintiffs, is now indebted to the plaintiffs in the remaining balance of $695.70, together with 6 per cent. interest thereon from June 1, 1934, for which plaintiffs now sue." (Italics ours)

The defendant denied the above allegations, and construing plaintiffs' pleadings, he contends that "they do not sue for any damage to pipe or any rental on pipe."

In a substantial sense this item ($46.38) and the rental for the continued use of the 10-inch casing are the only elements in controversy in the suit. It is apparent from the above pleadings the plaintiffs did not intend to waive their right to recover said items. It is true that the pleadings with reference thereto are somewhat indefinite but properly construed, we think, the pleadings make a consistent claim for each of said items of damages, first endeavoring to present them as offsets for gas which Hoffmann & Page, without dispute, obtained from the defendant in their drilling operations, and which the court allowed in his findings and judgment herein. The amount of the judgment is arrived at in the following manner:

| | |
|---|---|
| Contract price of 10-inch casing.. | $695.70 |
| Rental on 10-inch casing........ | 200.00 |
| Damage to 8-inch pipe.......... | 46.38 |
| | $942.08 |
| Less gas offset ............... | 400.00 |
| Judgment ............. | $542.08 |

together with 6 per cent. interest thereon from March 25, 1935, and all costs of suit, etc.

As noted, the defendant entered a general denial of the above allegations, and the court did not make the allowance for rental to the appellees according to their original plea, but, recognizing their alternative claim in that respect, granted a judgment for that item, not to the extent, or in the manner primarily sought. That the plaintiffs contended throughout for the above items of· recovery and sufficiently presented same in proper pleading is, we think, a fair conclusion, although the pleadings are not commendable in matters of directness and clarity. .

■ A long-established rule of pleading applicable to the allegations of this case is stated by Judge Roberts in Lee v. Boutwell, 44 Tex. 151, as follows: "The cause of action under our system of pleading depends upon the facts stated in the petition that are appropriate for a recovery rather than upon the particular breach laid, or the specific relief prayed, where there is a general prayer for relief, which, of course, must be understood to have reference and applicability to the facts alleged, whether the specific relief as specially prayed be granted or not."

‾ This authority has many times been cited and the rule often restated. It is set forth a bit more comprehensively in Morrissey v. Jones, Tex.Civ.App., 24 S.W.2d 1101, 1102, as follows: "It is a long-established rule in Texas that it is the allegations in a petition that fix the measure of relief and not the matters prayed for. As said in Milliken v. Smoot, 64 Tex. 171: 'A plaintiff must recover in the right in which he sues, and upon the facts stated in his pleadings as the basis of that right, and cannot recover through a right adverse to that asserted, it matters not what the prayer of the petition may be.' The vice in the original judgment fully appears in the allegations, and in the prayer interest is sought on the claims sued on from February 25, 1924, which was the date of the original judgment, and appellee prayed for general as well as special relief. It has been held that, where a plaintiff prays for general relief in addition to specific, he may recover on the general relief, although not entitled to specific relief. Lee v. Boutwell, 44 Tex. 151. Again it is held that, where general relief is prayed for, the court may grant specific relief. As said in Cheeves v. Anders, 87 Tex. 287, 28 S.W. 274, 276, 47 Am.St.Rep. 107: 'The facts upon which the right arises are alleged in the answer, and there is a prayer for general relief, which was sufficient to entitle Cheeves to whatever the law would accord him upon the alleged facts.' To the same effect are Zadick v. Schafer, 77 Tex. 501, 14 S.W. 153; Silberberg v. Pearson, 75 Tex. 287, 12 S.W. 850; Garvin v. Hall, 83 Tex. 295, 18 S.W. 731; Coleman v. Bank, 17 Tex.Civ.App. 132, 43 S.W. 938, affirmed in 94 Tex. 605, 63 S.W. 867, 86 Am.St.Rep. 871."

Upon these considerations and by virtue of these principles, we sustain as sufficient the appellees' pleadings presenting the item of damages for $46.38, and the item of rent for the 10-inch pipe. The holding with reference to the first item necessarily fixes venue of this case in Eastland county under the authorities first cited, and the court did not err in overruling the defendant's plea of privilege to be sued in Tom Green county.

■ What has been said above in a substantial measure reflects the ruling we will necessarily make with reference to the second assignment of error and the several propositions thereunder complaining that the court erred in entering judgment for the appellees for the item of $200 as rental upon the 10-inch pipe. The

amount of recovery sought by the pleadings for this item was $350. The facts underlying this phase of the lawsuit are in substance as follows: By reference to the contract, it will be seen that it provided that if a dry hole or nonproducing well were drilled, the defendant had the right to withdraw the casing from the well at his own expense and have it "racked either at the location of said well or near the tenant house on said farm, this point to be determined by first party [appellees]." The next provision of the contract provided that "in the event that it may be necessary, either through choice of second party, or as the result of inability to salvage" the pipe, he had the privilege of retaining and paying therefor as above set out. The well was not a dry hole, but developed into a producer, and as the result thereof the appellant, Eppenauer, wrote the appellees on June 7, 1934, giving such information and stating, in part, in that communication:

"It is our intention to pull the 10-inch casing as soon as the well may recede sufficiently in flow so as to make this possible without too great a wastage of oil. In fact, we started to pull this pipe and had it coming, but with the well heading every 20 minutes, were afraid we would get into trouble with the conservation authorities.

"Provided you could figure out some sort of equitable rental basis on this string of 10-inch whereby you would be reasonably compensated for the length of time we may be forced to retain it, we would be greatly pleased. If, on the other hand, you do not consider this plan to be feasible or desirable to you, we will, of course, proceed in line with our previously made contract."

Hoffmann & Page replied to this letter on June 18, 1934, stating therein:

"It is possible that we may arrange to start a well on some of our acreage there before long and we would like to have the 10-inch casing available for our use on that well. Suppose that for the present we hold the matter of 10-inch casing in abeyance pending definite decision on our part to drill in that area. We can agree at that time as to the equitable thing to do regarding any charge for your continued use of the 10 inch casing."

In reply to this appellant wrote appellees on June 25, 1934: "We are agreeable to your suggested manner of handling the 10-inch casing angle of the transaction, and will henceforth be guided entirely by your suggestions in this respect."

Under these circumstances, the appellant continued to use the 10-inch casing and thereafter on March 13, 1935, Hoffmann & Page wrote him in part as follows:

"Inasmuch as we anticipate moving our 10-inch casing away from the Sealy-Smith; and we also, expect to have use for the 10-inch pipe you have in your No. 1 Shields well, we will ask that you return this pipe to us, or to exercise your option of purchasing same as soon as possible."

Based upon this and other testimony in the record, the trial court granted the appellees recovery of the $200 as the reasonable rental value of the 10-inch casing for the time extending from June 7, 1934, to March 25, 1935, this being the period of time for which an extended use of the casing was granted under the terms of the foregoing communications between the parties. As heretofore stated, we deem the pleadings in this respect sufficient, and we think the evidence likewise sufficient to sustain the judgment. That being the case, the judgment of the trial court in respect to each of the items should be affirmed. We agree with that court's interpretation of the contract.

Since no interest was allowed on the $695.70 during the period from June 7, 1934, to March 25, 1935, when appellant exercised his option to purchase, there is no double recovery in that respect, recovery being for rental only in the sum of $200. All parties seem to recognize that about June 1, 1934, when appellant undertook to withdraw and return or rack the casing, the term or end of the contract had arrived with the privilege in appellant to exercise certain options, etc. In lieu thereof the extension agreement was made, and the right to require the exercise of the option at that time waived by the appellees in the interest of and upon the request of appellant. Its later exercise by appellant was but in accordance with the mutual understanding of the parties, in harmony with the original agreement as supplemented by their understanding, or arrangement.

There are other assignments and we have carefully considered them. Believing them to be without merit, they are hereby overruled. For the reasons assigned, the judgment of the trial court is affirmed.