# WASHINGTON LOAN & TRUST COMPANY *v.* SUSQUEHANNA COAL COMPANY.

ATTACHMENT AND GARNISHMENT; INTERROGATORIES; TRUST COMPANIES; PROPERTY IN SAFE-DEPOSIT BOXES.

1. Property deposited in a safe-deposit box of a trust company is the depositor's property in the hands of and in charge of the trust company, and, in an action against the depositor, the company may be garnished therefor.

2. In an action in which a trust company is garnished, the company is not exempt from liability to answer interrogatories as to whether or not it has in its possession, or under its control, a safe-deposit box standing in the name of the defendant.

3. Where affidavits in support of a writ of attachment and garnishment, laid upon a trust company as garnishee, state that the defendant has assigned his property to defraud his creditors, that his wife and

son have aided him in so doing, and that the defendant, his wife, or son, have recently deposited large sums in a safe-deposit box in the vaults of the trust company, the company cannot lawfully refuse to answer interrogatories as to whether or not it has in its possession, or under its control, a safe-deposit box standing in the name of the defendant, his wife, or his son.

No. 1554.   Submitted October 5, 1905.   Decided November 8, 1905.

HEARING on an appeal (specially allowed) by a garnishee from an order of the Supreme Court of the District of Columbia, at law, requiring it to answer certain interrogatories.

*Affirmed.*

The COURT in the opinion stated the case as follows:

This case is now before this court upon a special appeal allowed from an order of the court below requiring the Washington Loan & Trust Company, the appellant, to answer, as garnishee, certain interrogatories propounded to it by the Susquehanna Coal Company, the appellee, plaintiff below, in an action at law against John Kennedy to recover from him $24,-000 for coal sold and delivered.

With the declaration, affidavits supporting the claim and particulars of demand were filed.   At the same time a writ of attachment was issued, based upon three affidavits, which averred that Kennedy had disposed of and secreted, and was about to dispose of and secrete, his property in order to defraud his creditors.   Several of these affidavits averred that Kennedy had a safe-deposit box standing in his own name, or that of his wife, in the Washington Loan & Trust Company, upon which company, as garnishee, said writ was served; and the garnishee was notified to appear.

Attached to the writ were five interrogatories to which the garnishee was required to make answer under oath.   To the first and second interrogatories, requiring the garnishee to make answer, whether or not it was indebted to the defendant Kennedy, or whether or not it had any goods, chattels, and credits of said defendant, the garnishee answered in the negative.

To the three remaining interrogatories the garnishee, under advice of counsel, refused to make answer.

Two of the affidavits upon which the writ of attachment was based having stated that Kennedy had recently assigned all his property in his coal yard in Washington to his son, with the purpose of defrauding his creditors, and is about to dispose of and secrete other property with like intent, and that large sums of money have been deposited recently by Kennedy and his wife in safe-deposit box standing in his name, or his wife's, the box being in the vault of the Washington Loan & Trust Company, the three interrogatories which the garnishee refused to answer inquired concerning the safe-deposit box, its holder, and its contents.

The three interrogatories required the garnishee to make answer whether or not it had in its possession or control any goods, chattels, or other property of the defendant's wife, or whether or not it had in its possession, or under its control, a safe-deposit box belonging to the defendant or his wife, or such a safe-deposit box standing in the name of the defendant, or his wife, or his son, and further information respecting the right of access to, and the contents of, such safe-deposit box.

Upon the application of the appellee, the court below required the garnishee to submit to an oral examination, and to make full answer to each of the last three interrogatories. From this order of March 31, 1905, this court allowed this special appeal.

*Mr. A. S. Worthington, Mr. John B. Larner,* and *Mr. Charles L. Frailey,* for the appellant:

The safe-deposit box not being a chattel, or credit, or property, of the defendant in the hands of the trust company, the trust company, not having any control, or controlling possession, of anything within the safe-deposit box, or knowing its contents, should not be compelled to disclose whether it has rented to the defendant any such box, because such disclosure, in so far as the attachment proceeding is concerned, would be a vain thing, and

unwarranted by any law or principle governing attachments, and would therefore be a disclosure of private business relations, altogether unauthorized and unjust to both the trust company and its customer. These contentions are sustained by the authorities, which, however, are very few upon the point under discussion. See *Bottom* v. *Clark,* 7 Cush. 487; *Smalley* v. *Miller,* 71 Iowa, 90; *Gregg* v. *Hilson,* 8 Phila. 91.

*Mr. Frederic D. McKenney, Mr. John S. Flannery,* and *Mr. William Hitz* for the appellee.

Mr. Justice McCOMAS delivered the opinion of the Court:

On behalf of the appellant, it is urged that a trust company cannot be compelled by attachment proceedings to disclose whether or not it has in its possession, or under its control, a safe-deposit box belonging to a defendant in attachment proceedings; and, if the attachment be based upon affidavits averring that the defendant's wife and son have aided the defendant in disposing of his property to defraud his creditors, and have thereafter deposited large sums of money in a safe-deposit box standing in the name of the defendant, or in the name of his wife or son, the trust company, as garnishee, cannot be compelled to disclose either the name of the holder of such safe-deposit box in its vault, or its knowledge, if any, of the contents of the safe-deposit box.

If such use of attachment proceedings be sanctioned, it is said, such writs would be used to procure disclosures to aid other proceedings to get possession of the contents of such boxes, and thus pervert the provisions of the Code relating to attachment.

A safe-deposit box, it is urged, does not fall within the "goods, chattels, and credits" of the defendant which may be attached. The trust company has no right to open its customer's box, cannot know its contents, and does not "have in possession or under its control" any property of defendant which may be in the box; and these interrogatories, therefore, seek a vain thing, and

also seek to violate the private and confidential relations existing between a safe-deposit company and its customers.

Justice Sharswood, in the case of *Gregg* v. *Hilson,* in the supreme court of Philadelphia, at *nisi prius,* held that, under the Pennsylvania law of attachment such rented safe-deposit boxes cannot be the subject of attachment. "They are not 'a debt due to the defendant, or a deposit of money made by him, or goods or chattels pawned, pledged, or demised.' The contents of the safe are in the actual possession of the renter of the safe; they have not been deposited with or demised to the company. I am asked to make an order upon the company to open the safe and file an inventory of its contents. This, I am of opinion, I have no power to do." 8 Phila. 91.

We cannot accept the view of Justice Sharswood. Under the Code, attachment provisions take a wider range than the Pennsylvania statute at that period permitted. There is no uniformity in the statutes of the several States respecting attachment and garnishment. However, there are two comprehensive grounds common to every attachment system as to the general basis of a garnishee's liability: First, his liability *ex contractu* to the defendant; second, his possession when garnished of personal property of the defendant capable of being seized and sold on execution.

The Code of the District of Columbia liberally provides for reaching the debtor's goods, chattels, and credits by garnishment, and the several sections, taken together, define the possession of personal property which will make a third person liable as garnishee.

With the writ of attachment and garnishment in all cases the plaintiff may exhibit interrogatories to be served on any garnishee concerning any property of the defendant in his possession or charge, and the garnishee may be examined orally touching any property or credits of the defendant in his hands. D. C. Code, sec 447. [31 Stat. at L. 1259, chap. 854].

The plaintiff may exhibit interrogatories to be served upon any garnishee concerning any property of the defendant in his

possession or charge. D. C. Code, sec. 1089 [31 Stat. at L. 1360, chap. 854].

An attachment may be levied on credits of the defendant in the hands of a garnishee. D. C. Code, sec. 456 [31 Stat. at L. 1262, chap, 854].

Property of a defendant in a safe-deposit box of a trust company is either in the possession of the defendant, or in the possession of the trust company. If it is in the possession of the defendant, under the Code, it appears liable to attachment and execution. If it is in the possession of the trust company, such company may be garnished therefor, as in possession of personal property of the defendant capable of being seized and sold on execution. A mere device to guard from intrusion the defendant's property in the vault of the trust company neither devests the defendant of his property, nor releases the company from its charge of defendant's property. There is no magic in two keys, a master key and a customer's key, to put property belonging to a defendant in an attachment beyond the reach of creditors and the process of the courts.

If there were a doubt respecting the term "possession," there can be no doubt that property deposited by a defendant in a safe-deposit box of a trust company is the defendant's property in the hands of, and in charge of, the trust company; and, by the terms of the Code, the trust company is liable to be garnished therefor.

We agree with the decision in *United States* v. *Graff,* 67 Barb. 310. In the case before us the Washington Loan & Trust Company appealed from an order requiring it to answer the three interrogatories before mentioned respecting a safe-deposit box. In the case in New York the Mercantile Trust Company appealed from an order directing the sheriff to break open the safe-deposit box if necessary to get possession of certain contents thereof. That court held that "neither the safe, nor the tin box, constituted any portion of the defendant's dwelling, and they were not within the protection which the law affords to that against an officer acting under civil process. They were simply places of deposit and safe keeping for the defendant's property, which the sheriff may enter to make the

seizure required by law, in the execution of the process in his hands. If that were not so, there would be nothing to prevent a failing or insolvent debtor from turning all his property into valuable securities or other articles requiring but little space for their custody, and then placing them in the hands of a safe-deposit company for preservation, and defying all the efforts of his creditors to satisfy their debts by resorting to them. That would form an expedient for the success of fraudulent devices, which might render the laws of the State for the collection of debts entirely powerless. No such effect could be given to a deposit of that nature without at once defeating the object plainly designed to be secured by the law in rendering the debtor's property liable to the process issued in favor of his creditors in actions brought to recover their just debts. Against that, his dwelling alone is secured against the intrusive action of the officer. And that, in no sense, can be so far extended as to include either the safe or tin box in the custody of the Mercantile Trust Company, for the defendant. * * * If a certificate cannot be obtained showing the property so held for the debtor, and it cannot be seized under attachment or execution, then certainly the creditors are deprived of all ordinary means for applying it to the satisfaction of their debts. And an effectual mode would be at last discovered for enabling a debtor to withhold his property from his creditors. The law has not yet, and probably will not very soon, lend its aid to the success of such an expedient for the protection of a debtor's property against the clearly defined rights of his creditors."

A statute in the State of Washington provides that, when the garnishee has in his possession, or under his control, any personal property of the defendant liable to execution, the court shall require the garnishee to deliver the same to the sheriff.

In *Trowbridge* v. *Spinning,* 23 Wash. 69, 70, 54 L. R. A. 204, 83 Am. St. Rep. 806, 62 Pac. 125, it appeared that Spinning had rented a box controlled by a master key and by Spinning's key, in the safe-deposit vault of the bank, and the court held that, inasmuch as the bank could put it in the power of Spinning to remove the contents of the box, and Spinning could

not remove the contents of the box without the consent and co-operation of the bank, the latter, as against the defendant, had control of the contents of the box, although it could not, as garnishee, answer specifically as to the contents of the box. The court could inquire into the contents of the box and determine what effects therein were liable to execution.

We find no good reason for exempting property of a defendant in a safe-deposit vault from execution or attachment. The Code recites the classes of property which are exempt from execution and attachment. In this case before us the learned justice in the court below decided that the trust company alleged to have charge of the property of the defendant, Kennedy, in a box in the safe-deposit vault was not exempt from liability to answer as garnishee the interrogatories whether or not it had in its possession, or under its control, a safe-deposit box of the defendant.

The court below also decided that the trust company should further answer like interrogatories concerning property of the defendant's wife and son, and concerning a safe-deposit box alleged to stand in the name of either of them. The Code (sec. 470) [31 Stat. at L. 1264, chap. 854] provides that when, as in this case, the ground of the attachment is that the defendant has assigned or disposed of his property with intent to defraud his creditors, the attachment may be levied upon the property alleged to be so assigned in the hands of the alleged fraudulent assignee as a garnishee.

The appellee, the plaintiff below, in this attachment, was entitled to the answer of the garnishee, the appellant, disclosing whether or not there was in its vaults and in its charge a safe-deposit box standing in the name of either of the alleged fraudulent assignees, the wife or son of the defendant, Kennedy.

It is needless to recite here the provisions of the Code which afford this trust company protection from wrongful attachments and garnishments, and which are likely to save it from frequent and vexatious inquisition.

The few decisions upon the question raised by this appeal suggest that heretofore such suits have been infrequent.

We perceive no injustice or injury done to the garnishee by the order appealed from. That order must be affirmed with costs, and it is so ordered. The cause is remanded for further proceedings.                                        *Affirmed.*