CITY OF SAN ANTONIO v. NEWNAM.
(No. 6252.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 22, 1919. Rehearing Denied Feb. 11, 1920.)

1. EVIDENCE ⚙➝83(1)—PERFORMANCE OF DUTY BY OFFICERS PRESUMED.

The legal presumption prevails, in the absence of contrary proof, that public officers have not culpably neglected, but have properly performed, their official duties, and that their acts are regular and in compliance with law.

2. MUNICIPAL CORPORATIONS ⚙➝183(4)—BURDEN TO SHOW IMPROPER REMOVAL ON OFFICER SUING FOR SALARY BY PRESUMPTION OF PROPER REMOVAL.

In suit by a city marshal removed by the mayor to recover salary after an illegal removal, the presumptions that the mayor properly performed his duty in relation to the removal casts on plaintiff marshal the burden to prove that the mayor removed him for political reasons alone, contrary to the charter, and that reasons of incompetency, etc., were fraudulently assigned by the mayor, or were not placed in the hands of the clerk for filing when the removal took place.

3. MUNICIPAL CORPORATIONS ⚙➝183(3) — REMOVAL OF MARSHAL NOT RENDERED ILLEGAL BY FAILURE OF CLERK TO FILE MAYOR'S STATEMENT OF REASONS FOR REMOVAL.

When paper containing the reasons of the mayor of a city for removing the city marshal

was placed in the hands of the city clerk for filing as required by the charter, the mayor had complied with the law, and failure of the clerk to file the paper so placed in his hands did not render the removal or discharge illegal.

4. MUNICIPAL CORPORATIONS ⚙➝183(4)—EVIDENCE HELD TO SHIFT BURDEN TO CITY TO JUSTIFY REMOVAL OF MARSHAL SUING FOR SALARY.

When a city marshal previously removed by the mayor swore to conversations in which the latter gave political reasons for removal, a prima facie case was made, and the presumption destroyed that the mayor had given the true reasons for the removal in the statement he filed with the city clerk as required by charter, and the burden was cast on the city, in the removed marshal's suit for salary, to sustain the reasons for the discharge by showing that they had a basis in unfitness of the marshal.

5. TRIAL ⚙➝139(1)—QUESTIONS OF EXISTENCE AND SUFFICIENCY OF EVIDENCE FOR COURT AND JURY RESPECTIVELY.

The question of whether there is any evidence is one for the court, and whether sufficient evidence is one for the jury.

6. APPEAL AND ERROR ⚙➝1001(1)—NO REVERSAL OF JUDGMENT BASED ON VERDICT SUSTAINED BY TESTIMONY.

If there is any testimony in a case on which verdict can be predicated, judgment based on such verdict should be sustained.

7. MUNICIPAL CORPORATIONS ⚙➝183(4)—EVIDENCE SHOWING REMOVAL OF MARSHAL FOR POLITICAL REASONS.

In an action against a city for salary by its marshal removed from office by the mayor, evidence of plaintiff marshal as to his conversation with the mayor, tending to show that he was removed for political reasons and not for incompetency, as stated by the charges filed by the mayor in accordance with charter, held sufficient to sustain verdict for plaintiff marshal.

8. TRIAL ⚙➝256(1)—FURTHER ADDITIONAL INSTRUCTION MUST BE REQUESTED.

If defendant desired an addition to the charge, such further charge should have been requested.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by Frank Newnam against the City of San Antonio. From judgment for plaintiff, defendant appeals. Affirmed.

R. J. McMillan and J. D. Dodson, both of San Antonio, for appellant.

Leo Tarleton, A. L. Matlock, and T. P. Hull, all of San Antonio, for appellee.

FLY, C. J. This is a suit instituted by appellee to recover the sum of $1,555.53 from appellant, together with 6 per cent. interest, alleged to be due for his salary for nine months and ten days as city marshal of San Antonio. It was alleged that the salary was

---

$2,000 per annum, and that, after serving fourteen months and twenty days of his two years' term, he was illegally removed from his office and deprived of his salary by A. H. Jones, mayor of the city of San Antonio. Appellant, in its answer, justified the removal under the terms of its charter. The cause was submitted to a jury on three issues: First, did the mayor give his true reasons for the removal of appellee; second, were the reasons really political; and, third, were the reasons filed at time of the removal? The first issue was answered in the negative, the second in the affirmative, and the third in the affirmative. On the answers judgment was rendered in favor of appellee for $2,125.27. On a former appeal the judgment was reversed and cause remanded. 201 S. W. 191.

The first, second, and third assignments of error assail the action of the court in refusing to peremptorily instruct a verdict for appellant, because there was no evidence that tended to prove that Mayor A. H. Jones removed appellee for political reasons alone and did not remove him on the grounds assigned.

This court, on the former appeal, through an opinion written by the late Associate Justice P. H. Swearingen, decided that power to appoint, given the mayor by the charter of the city, carried with it power to remove, under any limitations or conditions fixed by the charter; that under the charter the mayor could for any reason, other than one purely political, discharge any appointee, and the discharge would rest on the belief of the mayor as to incompetency rather than on actual incompetency; and that, although political reasons may have operated with other reasons to cause a discharge, that would not render the removal inoperative.

The charter provides that—

"Any appointive officer, employé, agent or servant of the city, employed under authority of the council, may be discharged from service by the mayor for any reason he may deem sufficient."

It is also provided "that no person shall be dismissed or discharged for political reasons," and that the mayor "shall file his reasons in writing for such discharge with the city clerk at the time of such discharge." It is also provided that the discharge shall be approved by a majority of the city council. The evidence showed that on August 19, 1912, A. H. Jones took the oath as mayor of the city of San Antonio, and immediately thereafter notified the council that he had discharged appellee from the office of city marshal, and his action was immediately approved by a majority of the city council. The reasons given by the mayor for the discharge of the marshal, which were filed by the clerk either on August 19th or August 20th were "incompetency and general unfitness to perform the duties" of the office. That paper was dated August 19, 1912, and, while the evidence was uncertain as to when the file mark was put upon the paper, there is no testimony tending to show that it was not placed in the hands of the clerk by the mayor for filing on August 19, 1912. There was no testimony tending to show that the mayor deemed appellee competent and generally fit to perform the duties of the office when he discharged him, unless the fact that the discharge of the marshal was made an issue in the campaign, and the remarks attributed by appellee to the mayor just before he qualified and shortly thereafter, showed that appellee was discharged for political reasons alone, and the reasons given by the mayor were false and fraudulent.

[1] The legal presumption prevails, in the absence of proof to the contrary, that public officers have not culpably neglected, but have properly performed, official duties, and that their acts are regular and in compliance with law. City of San Antonio v. Tobin, 101 S. W. 269; White v. Manning, 46 Tex. Civ. App. 298, 102 S. W. 1161. The presumption would therefore be indulged in that the discharge of appellee was made in compliance with the requirements of the charter, namely, that he was discharged because deemed by the mayor incompetent and unfit; that the reasons were filed with the clerk at the time of the discharge; and that he placed the file mark on the paper at that time. The presumption as to acts of public officers is so old that it was many years ago crystallized into a Latin maxim: Omnia præsumuntur rite et solemniter esse acta donec probetur in contrarium— a fair translation of which is: All things are presumed to have been rightly and duly performed until it is proved to the contrary.

[2, 3] The legal presumptions mentioned cast upon appellee the burden of showing that A. H. Jones, mayor, removed him from office for political reasons alone, and that the reasons assigned by the mayor were falsely and fraudulently made, and, if not so made, such reasons in writing were not placed in the hands of the clerk for filing at or about the time the discharge took place. While the city clerk was uncertain as to the exact time of day the paper containing the reasons for discharge was placed in his hands, yet he closed his testimony with the positive statement:

"Yes, sir; this identical paper was in my possession in the council chamber at the time Mr. Newnam was discharged."

When the paper was placed in the hands of the clerk for filing, the mayor had complied with the law, and a failure on the part of the clerk to file the paper when placed in his hands would not render the discharge

illegal. As said in Holman v. Chevaillier's Adm'r, 14 Tex. 337:

"It is the duty of the clerk, when a paper is thus placed in his custody, or 'filed' with him, to indorse upon it the date of its reception, and retain it in his office, subject to inspection by whomsoever it may concern; and that is what is meant by his 'filing' the paper. But where the law requires or authorizes a party to file it, it simply means that he shall place it in the official custody of the clerk. That is all that is required of him; and, if the officer omits the duty of indorsing upon it the date of the filing, that should not prejudice the rights of the party."

See, also, Snider v. Methvin, 60 Tex. 487, and Bank v. Trust Co. (Tex. Civ. App.) 186 S. W. 361.

The charter does not require the reasons given by the mayor to be read to the council, and all testimony to the effect that such reasons were not read has no probative force as to the filing of the paper. If the paper was handed to the city clerk, as sworn to by him and not contradicted, it was filed as required by the charter. Appellee received a notice of the paper two days after he was discharged. Notice dated August 19, 1912, was sent to and received by appellee that he had been discharged for reasons then on file.

[4] The record discloses the fact that appellee testified on this trial, as he did not on the first trial, that the mayor before he was sworn came to appellee and sat down by him and told him that he had nothing against him personally, but that he had to put his friends in office. Also that a few days afterwards Mayor Jones said:

"You should not get mad at me. You have been in politics longer than I have. I have nothing personal against you. I fired you to put in my own people who helped me to be elected."

If it be true, as must have been concluded by the jury, that A. H. Jones told appellee what the latter swore he did on the last trial, the reasons for discharging appellee may have been political. That evidence indicated a discharge to make room for a favorite associated with the mayor in his political campaign, and that would be political reasons. It would be an enforcement of the political rule so often invoked that "to the victor belongs the spoils." There was no evidence offered by appellant to show the incompetency or inefficiency of appellee, which might have been done if such incompetency or inefficiency existed. When appellee swore to the conversations with Jones in which he gave his reasons for discharging appellee, a prima facie case was apparently made out, and the presumption that the mayor had given the true reasons for the discharge destroyed, and the burden was cast upon the appellant to sustain the reasons for discharge by showing that those reasons had a basis in the incompetency or unfitness of appellee for the office. There were hundreds of men in close association with Jones during the campaign for the mayoralty who undoubtedly could have testified as to the competency of appellee for the office of chief of police. Doubtless, numbers could have testified to the reputation of appellee as to his fitness for the office. Not one word of such testimony was offered by appellant, while witnesses were introduced by appellee who swore to his competency. Not one of the friends of Jones were placed on the stand to testify as to the reasons given by him as to the discharge of appellee. Certainly the reasons were given by Jones in his speeches, and in private conversations, for it appears from the platform adopted by the friends of Jones that appellee was one of the issues of the campaign and that a pledge was made that he should be discharged.

It is true that suspicion surrounds the testimony of appellee because not given on the first trial of this case, and in some particulars is inconsistent with his former testimony, because on the former trial he stated that he had no conversation with Jones, and his efforts at reconciliation of the two statements is very unsatisfactory; still the jury saw fit to credit his testimony.

Appellee stated on the first trial that he had never spoken to Jones in his life, and reiterated that statement, and yet testified to the conversations with Jones on the second trial. His explanation of the matter was that he meant that he had not spoken to Jones during the campaign, which was given some plausibility by the fact that the question was as to personal conversations during the campaign. The reason given for the discrepancy in his testimony is apparently unsatisfactory, and still it satisfied a jury against whom no charge of improper conduct has been preferred. As no evidence was introduced by appellant to contradict or overthrow the evidence of appellee, reliance being had on its inherent weakness and inconsistency, the jury may have thought the explanation sufficient and that his testimony could not be assailed. There was evidence tending to show that Jones sat close to appellee, "right along side of him," when he came into the council chamber, at the time when appellee swore he talked with him. The meeting of the council lasted several hours at that time, as the council was canvassing the city vote. As soon as the mayor took the oath, he said, "I fire Frank Newnam," which would indicate that appellee was the subject uppermost in his mind at the time. No attempt was made to controvert the testimony, which tended to corroborate the testimony of appellee that he talked with Jones at that time. If no conversation took place at that time, Jones was undoubtedly

surrounded by friends, and they could have denied it.

[5, 6] The rule is well established in Texas, if not in every state in the Union, that the question of whether there is any evidence is one for the court, and whether sufficient evidence one for the jury. As said by the Supreme Court in the case of Lee v. Railway, 89 Tex. 588, 36 S. W. 65:

"To authorize the court to take the question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it."

That is the correct rule as laid down by most of the decisions in Texas. In other words, if there is any testimony in a case upon which a verdict can be predicated, a judgment based on such verdict should be sustained. The statutes of Texas make the jury the exclusive judges of the credibility of witnesses and the weight to be given to their testimony, and, however much an appellate court might differ with the jury, still in the face of a verdict it can do nothing. As said by this court in Railway v. Butshek, 34 Tex. Civ. App. 194, 78 S. W. 740:

"It appears that the case had been tried once before, and there were apparently contradictions between plaintiff's testimony on the former trial and that on this trial as to where the board was, whether over the dugout or not. Inconsistencies on the subject between his testimony on the two trials, and inconsistencies, if any, in the testimony he gave at the latter trial, if any, were matters which addressed themselves to the jury."

So, in Railway v. Butler, 61 Tex. Civ. App. 617, 131 S. W. 240, it was said:

"But, even if the witness made inconsistent or contradictory statements, the whole should have gone to the jury to be given such credence and weight as the jury might have seen proper."

[7] The question then before this court is: Did the evidence of appellee as to his conversations with Jones tend to show that he was removed for political reasons? After a full and thorough consideration of the evidence, we have arrived at the conclusion that it does, and if' believed to be true by the jury would sustain their verdict. It showed that Jones had nothing personal against appellee, but removed him because he had to put his friend in office. As he said: "I fired you to put in my own people who helped me to be elected." That was undoubtedly politics pure and simple.

Even if it should be doubtful as to whether the reasons for the discharge were placed in the custody of the clerk on August 19, 1912, there is no doubt whatever that they were on file on September 3, 1912, when the minutes, which recited the discharge and the filing of the reasons, were approved by the city council. From that time, under the evidence, as found in the record, the discharge was according to law, if it was not made for political reasons. Appellee admitted receiving a notice of the reasons given on August 21st, just after his removal.

[8] The fourth assignment of error is overruled. The charge was correct so far as it went, and, if appellant desired an addition to it, a charge should have been requested.

We have concluded that, whatever may be the views of this court as to the weight to be given to the testimony of appellee, the jury has credited him, and such testimony forming a sufficient basis for the verdict it must be sustained.

Therefore a rehearing is granted, and opinion reversing and remanding this cause will be withdrawn, and the judgment will be affirmed.