**BLANKS v. RADFORD et al.**

No. 2512.

Court of Civil Appeals of Texas. Eastland.
May 25, 1945.

Rehearing Denied July 14, 1945.

McMahon, Springer & Smart, of Abilene, for appellant.

W. E. Lessing, of Abilene, for appellees.

LESLIE, Chief Justice.

This is a garnishment proceeding occasioned by the issuance of such writ after judgment at the instance of B. M. and O. E. Radford directed to the Citizens National Bank of Abilene, predicated on an original District Court judgment, of date, November 15, 1932, in cause No. 1625—B in favor of J. M. Radford, now deceased, against C. H. Blanks. Judgment upholding the garnishment was rendered in favor of appellees B. M. and O. E. Radford, and Blanks appeals.

The garnishee bank answered, admitting the defendant Blanks had on deposit in open account the sum of $1,835.16, and further stated that it had in its building and vault a safety deposit box rented to defendant Blanks, but that it did not know the contents thereof. That there were two locks on such box, the garnishee holding the key to one lock and the defendant the key to the other, and that garnishee could not examine the contents of the box without the aid of the other key and did not know what effects, if any, Blanks kept therein. The bank also prayed that Blanks be made a party to this proceeding, that he might present his own defenses.

Said Blanks appeared and moved to quash the garnishment proceeding, for the reason that the contents of the safety deposit box are not "the type or character of effects subject to garnishment under the laws of the State of Texas." Further answering, Blanks alleged that an original order of sale issued January 10, 1933, on the judgment in 1625—B; that a sale thereunder of property belonging to him was made February 7, 1933, and the order of sale returned February 8, 1933, showing execution thereof. That thereafter, no valid execution ever issued on said judgment. "That a purported alias execution was prepared by the clerk of this Honorable Court on the 24th day of May, 1937, and a purported pleures execution was prepared by the clerk on September 30, 1937, but said executions were in all things invalid and without force and effect, and did not serve to prevent the judgment upon which the writ of garnishment herein is predicated from becoming dormant, and did not toll the ten year statute of limitation for the reason that at the time of the preparation of said execution, the said J. M. Radford, sole plaintiff in judgment, was then dead; that there was no compliance or attempt at compliance with Article 3775 of the 1925 Revised Civil Statutes, requiring the filing of an affidavit with the clerk of this Honorable Court as to the death of said J. M. Radford, together with a certificate of any lawful court as to the appointment of any representative of the estate of J. M. Radford, or, in the alternative, if there was no administration upon the estate of said J. M. Radford, that no affidavit to said effect was so filed disclosing the lack of necessity for such administration, as a consequence of which failure the clerk of this court was without authority to issue said writs of execution, and same were nullities and did not have the effect of suspending the ultimate dormancy of said judgment on the 10th day of January, 1943, at which time the ten year statute of limitation intervened to forever bar the same."

Appellees in part controverted the answer of the garnishee bank, insofar as it failed to disclose the contents of the safety deposit box, and alleged that Blanks owned and possessed property sufficient to satisfy the judgment, or balance thereof, and that he keeps such property concealed in said box, and they prayed that the garnishee bank and Blanks be required to answer under oath as to the contents of said safety deposit box.

Trial was before the court without a jury, and at the conclusion of the testimony, judgment was rendered in favor of plaintiffs (B. M. and O. E. Radford) against the bank for the sum of $1,835 16,

amount of defendant's general deposit, and the judgment, in addition, commanded the garnishee bank and defendant Blanks to deliver to the sheriff or any constable so much of the effects ($2,200) in safety deposit box of said Blanks as would be sufficient to satisfy the further unpaid balance of the judgment against him, namely, $483.63, costs, etc.

Said judgment in favor of J. M. Radford in cause 1625—B was for $1,368.10, with interest, etc. An order of sale and execution issued thereon January 5, 1933, and thereafter returned February 10th, showing levy on property of Blanks, out of which the sum of $200 was realized.

J. M. Radford died July 4, 1933, leaving a will disposing of his interest in the community estate of himself and wife, B. M. Radford, one of the appellees herein. One half of his community interest was given to his wife and the other half to O. E. Radford, the other appellee. Certain persons were made independent executors.

The will was probated August 1, 1933, and in due time the independent executors qualified as such. They filed an inventory and appraisement of the properties of said estate and showed among the claims that against C. H. Blanks to be community property of J. M. Radford and said wife.

December 18, 1935, Bessie M. Radford and O. E. Radford, individually, and the independent executors of said estate executed an instrument, whereby the latter delivered to the beneficiaries under the will the property passing thereunder. Thereupon the office of independent executors terminated, and the instrument evidencing the release of the executors from further responsibilities was duly filed in the Probate and Deed Records of Taylor County.

May 24, 1937, about one and a half years after the termination of said administration, an execution was issued on the judgment in cause 1625—B, and the execution recites that the judgment formerly obtained by J. M. Radford "is now owned by O. E. and B. M. Radford." The execution was delivered to the sheriff, who returned the same, showing that he failed to find any property subject thereto.

On September 30, 1937, a pluries execution was issued on the judgment, placed in the hands of the constable, who likewise failed to find any property subject to the same.

No further action was taken on the judgment against Blanks until the present garnishment proceeding of September 20, 1944, based upon the original judgment alleged to be then owned by plaintiffs.

November 24, 1944, prior to trial herein on December 7, 1944, and upon agreement of parties waiving formal order of the court, the defendant Blanks, in answer to written interrogatories, stated that he had in said safety deposit box money in excess of $600, and he further stated that the bank had the master key which controlled the door, and "the bank's key, in conjunction with my key, is necessary to open the door." On the trial Blanks testified he had $2,200 in the safety deposit box, and that, since the writ of garnishment was served, the bank would not let him have access to the contents of the box. The evidence is that access to the contents of the safety deposit box is gained in the way usual and customary in such instances.

In the light of appellant's points, we think two controlling questions are presented by this appeal:

(1) Was the judgment in cause 1625—B valid and subsisting at the time the writ of garnishment was issued?

(2) Were the proceedings in the trial court taken together sufficient to support the judgment for the delivery of said effects of C. H. Blanks shown to be in the safety deposit box and not of a nature exempt by law?

The trial court has made findings of fact and conclusions of law, and among them has found, both as a "fact" and as "a matter of law," that the judgment was valid and subsisting. That it was not a dormant judgment when this garnishment proceeding was instituted thereon. We first examine the judgment in the light of the fact finding.

It is undisputed that the original order of sale and execution issued January 5, 1933, and that the alias execution issued May 24, 1937, and the pluries execution issued September 27, 1937, and that each was timely issued and placed in the hands of proper officers, etc. These last executions of May and September, 1937, are assailed by appellant on the ground that at the time they were issued plaintiff in original judgment, J. M. Radford, was dead, and that no affidavit, as required by Articles 3775 and 3776, R. C. S. 1925, had been filed with the clerk as a predicate for the issuance of said executions. If such contention is

882

shown to be correct, the judgment was dormant and not valid and subsisting when the attempt was made to base the present garnishment proceeding thereon, September 20, 1944. That is, the judgment was barred by limitation (10 years) this last date.

Whether or not such affidavit was filed was a question of fact presented by the pleadings and the evidence (if there be any contrary evidence at all) and before the trial court for determination. The existence of such affidavit was an evidentiary fact bearing upon the ultimate fact (dormancy of the judgment) and it was resolved against the appellant by the court's judgment amounting to a finding and conclusion that the judgment was valid and subsisting when this garnishment proceeding was instituted. The court having so found, we think it becomes immaterial whether this proceeding is direct or collateral, and that in a measure the matter is immaterial upon whom rested the burden of proof.

We shall, however, further examine the nature of this proceeding and the testimony adduced.

In the case of a deceased owner of a judgment, Articles 3775 and 3776, R. C. S. 1925, require that certain affidavits, etc., be filed as a basis for execution, etc. Article 3775 has several times been construed by the appellate courts of this state. Scott v. Lyons, Solomon & Co., 59 Tex. 593, 594; Fowler v. Burdett, 20 Tex. 34; Holman v. Chevaillier's Adm'r, 14 Tex. 337, 338.

■ From the Scott case we have this holding: "After the death of the sole plaintiff an execution could issue on the judgment in behalf of his administrator only upon his complying with the statute. It is the settled law of this state that the filing with the clerk of the affidavit of the death of the plaintiff, and the certificate of the appointment of an administrator, are conditions precedent to the authority of the clerk to issue an execution upon the judgment in the name of the administrator. Holman v. Chevaillier's [Adm'r], 14 Tex. 338; Fowler v. Burdett, 20 Tex. 34. And, as there are conditions precedent to authorize the clerk to issue the execution, if the statute is not complied with in this respect, the clerk would have no authority for issuing the writ, and it would be held invalid."

These authorities are in effect the same, but the meaning of the statute is obvious and in accordance with the construction given.

■ There was no direct testimony introduced as to the filing of said affidavit as a basis for the alias and pluries executions, but, as stated, it conclusively appears that they were issued and placed in the hands of officers for execution. These executions are in evidence. These facts carry the presumption that in issuing said executions the clerk at that time (1937) complied with the law in the performance of such official duty and acted upon the authority of the required affidavit.

■ "The law presumes, until the contrary is shown, that every public official will discharge the duties imposed upon him by the law." 17 T. J. p. 276, § 5.

■ "There is a presumption in favor of the regularity of official acts, and when a public official discharges or undertakes to discharge a duty with which he is charged by law, it will be presumed, in the absence of evidence to the contrary, that he did so rightfully and in a lawful manner, and that he acted within, and not in excess of, his power and authority." 17 T. J. p. 278, § 76. See also 22 C. J. p. 130, § 69, note 77; 31 C.J.S., Evidence, § 146.

The trial court before whom the case was being tried was warranted in relying upon this presumption until the contrary was shown. City of San Antonio v. Newnam, Tex.Civ.App., 218 S.W. 128; Underwood v. Pigman, Tex.Com.App., 32 S.W.2d 1102; Brown v. Bonougli, 111 Tex. 275, 232 S.W. 490; Ocean Accident & Guaranty Corporation v. May, Tex.Com.App., 15 S.W.2d 594; Clements v. Texas Co., Tex. Civ.App., 273 S.W. 993; Zarate v. Cantu, Tex.Civ.App., 225 S.W. 285.

■ As corollary to the above presumption or proposition, "It is the generally accepted view of courts and text book writers that the presumption places upon the party against whom it operates the burden of producing evidence." 13 Texas Law Review 55, and many authorities there cited.

■ So much for the presumption and its legal effect. We now examine the testimony offered by appellant Blanks in his effort to meet and discharge the burden cast on him by the presumption to produce testimony counter to the same. The evidence in rebuttal to the presumption is, in the main, if not exclusively, that of Roy Skaggs, District Clerk of Taylor County

since January, 1939. He testified at the trial to the effect that he and his chief deputy had, at the request of appellant's attorney, recently examined the papers in the original cause, 1625—B, as well as his office, in search for an affidavit in compliance with said statute article 3775 et seq. and that he was unable to find any affidavit setting forth the death of said J. M. Radford, or that no administration was pending on his estate and none necessary. In substance, his testimony is that "after searching the records" it was his "conclusion" that no such affidavits "were in the office" at that time.

Miss Belle Welborn was the District Clerk in 1937, when the alias and pluries executions were issued by her, but she was not called to testify concerning the filing of such affidavit as her authority for issuing said executions.

W. E. Lessing, attorney for B. M. and O. E. Radford in the present cause, an attorney for J. M. Radford in his lifetime, was on the witness stand in the trial of the present cause, but gave no testimony concerning the making and filing of any such affidavit as a basis for the alias and pluries executions, and neither did appellant's attorney propound any question to him concerning his possible knowledge of the making and filing of such affidavits with the clerk at that time and as a prerequisite to the issuance of said executions which were delivered to him.

For the reasons and upon the authorities hereinafter set forth, we are of the opinion that Skaggs' testimony, of so limited, remote and negative nature, should not be regarded as affording any evidence in nature sufficient to cause said presumption (in favor of the filing of such affidavit) to vanish. But if we be mistaken in that respect, then the entire evidence offered and relied on by appellant in contradiction of and to overcome the effect of such presumption did no more than raise an issue of fact which the trial court has obviously considered with care and resolved in favor of appellees, thereby necessarily making a direct and affirmative finding that the clerk issued the alias and pluries executions regularly upon. the authority of such affidavit as required by said article of the statute.

It is not easy to interpret and appraise the opinions of our various appellate courts on the nature, character and effect of the testimony necessary to be advanced by the one against whom such a presumption operates. Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763, 768, is regarded as a leading recent authority. A portion of that opinion pertinent in appraisal of such testimony here under consideration is as follows:

"It follows that the presumption as to the ownership of the truck arising from the registration and the presumption as to its use in transporting the ditching machine arising from the permit are not to be regarded as having raised an issue or issues of fact for the jury's determination *if such presumptions were met by positive rebutting proof.*

"There is conflict in the decisions as to the degree and character of proof necessary to rebut or overcome such presumption. By some it is held that the presumption disappears when met by positive proof or substantial proof or by evidence which the jury has the right to believe or by the uncontradicted testimony of the defendant. Others hold that the presumption is not overcome by the testimony of the defendant alone or by the testimony of interested witnesses or by evidence which. the jury has the right to disbelieve. See the authorities discussed in notes, 42 A.L.R. 907–908; 74 A.L.R. 954–958; 96 A.L.R. 637–640; McCormick & Ray's Texas Law of Evidence, pp. 51, 52, Sec. 34. *The authorities are, however, in almost complete agreement that the presumption is conclusively overcome by clear, positive and undisputed evidence.* See the Texas cases, supra, and the decisions in the A.L.R. notes above cited." (All italics herein ours.)

The negative testimony of Skaggs, that his search (for the benefit of this trial in 1944) did not then disclose an affidavit presumably filed 7 years prior thereto, or in 1937, as authority for the issuance of said alias and pluries executions by his predecessor in office, does not possess the "positive" or "substantial" nature designated in said opinion as necessary and competent to cause the presumption in favor of the regularity of the issuance of said executions to vanish, but, as stated above, if the evidence rises to such dignity or be deemed to have such nature, then the same was for the trial court who appraised it, with the result that the original judgment was found to be valid and subsisting and a proper basis for the present garnishment proceeding.

The above authorities are cited with approval by our Supreme Court in Southland Life Ins. Co. v. Greenwade, 138 Tex. 450, 159 S.W.2d 854, wherein Langlitz v. American Nat. Ins. Co., Tex.Civ.App., 146 S.W. 2d 484, opinion by this court, is likewise cited.

The nature and quality of the contrary testimony that causes such presumption to vanish is illustrated by the facts of the opinion in Houston News Co. v. Shavers, Tex.Civ.App., 64 S.W.2d 384, 386, writ refused, wherein the Waco Court of Civil Appeals, through Judge Alexander, used this language: "Evidence that the truck with which the injury was committed belonged to the news company and that it was being driven by one regularly in its employment, in the absence of evidence to the contrary, raised a presumption that such servant was engaged in the news company's business at the time of such collision. Studebaker Bros. Co. v. Kitts, Tex.Civ. App., 152 S.W. 464. This, however, is a mere rule of procedure and the presumption vanishes when *positive evidence* to the contrary is introduced."

In the Greenwade case, supra [138 Tex. 450, 159 S.W.2d 857], a like thought is expressed in this language: "We agree with the company's contention that a presumption, as such, is not evidence and that it vanished as such in view of the opposing evidence; but we do not agree that the evidentiary facts upon which it was established, could no longer be considered by the trier of the facts. Wigmore on Evidence, 2d Ed., sec. 2491. The section just cited states that if *substantial* contrary evidence is offered 'the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule,' and that 'it is therefore a fallacy to attribute probative force to a presumption, increasing for the jury the weight of the facts, even when the opponent has come forward with some evidence to the contrary.'"

Farmers' State Bank & Trust Co. of Gorman v. Central State Bank of Dallas, Tex.Civ.App., 281 S.W. 632, 633, writ refused, the validity of like presumption, countered by such negative testimony, was appraised by the court, as set forth in the last syllabus of that opinion: "Where copy of letter was found in desk of bank official after his death relating to transaction performed by him on day it bears date, it is presumed to have been sent, *and pre-sumption is not overcome by fact of addressee's failure to find original."*

A like estimate is reflected by an opinion by our Supreme Court in East Texas Fire Ins. Co. v. Perkey, 89 Tex. 604, 35 S.W. 1050. The third syllabus thereof reads: "Testimony of a person to whom a letter was directed that *he had no recollection of receiving the letter* is insufficient to rebut the presumption that a letter deposited in the post office, properly directed and fully prepaid, was received."

In Zarate et al. v. Cantu et al., Tex.Civ. App., 225 S.W. 285, 286, motion was filed to dismiss the writ of error on the ground of failure to file petition for writ within the statutory period. The petition and bond bore the clerk's file mark of August 22, 1919, and such filing date appeared three times, once on the petition and twice on the bond. It was stated in the answer to the motion to dismiss that the petition and bond were mailed to the clerk from San Antonio on August 11, 1919, and should have reached him on August 12, 1919, and that, therefore, the file mark of August 22, 1919, was due to a mistake of the clerk. Upon such state of facts, the court held: "There being nothing in the transcript to indicate that any clerical error was made in the three notations of the date of filing, all of which are alike, and there being a presumption in favor of the regularity of official acts, evidence relied on to convince this court that it has jurisdiction should go further than merely to show that a petition was mailed at San Antonio, which in due course of mail should have reached the clerk 10 days before the date indicated by his file marks. Such evidence might raise a presumption that the clerk received the petition on August 12, 1919, in the absence of any other evidence, but this presumption is counterbalanced by the presumption that the clerk placed his file mark thereon in accordance with the requirements of the law."

Evidently the trial court's judgment— fact finding—as to the validity of the executions rests upon his conclusion and appraisal of the testimony relative to the filing of the affidavit as a prerequisite to said executions. If, as stated in the outset, the testimony does not rise to that dignity, then the judgment is correct, since it rests upon the strength of the presumption that the clerk performed his duty.

Having reached the conclusion that the trial court correctly found the original

judgment in 1625—B valid and subsisting at the institution of this proceeding and owned by B. M. and O. E. Radford, we now pass to a consideration of appellant's points attacking the holding that the contents of the safety deposit box were subject to be impounded by the writ of garnishment. In that connection, appellant also contends the contents of the box were not in the possession of the garnishee bank at the time of the service of the writ, etc.

The court found that B. M. and O. E. Radford owned the original judgment in cause 1625—B, and that at date of judgment in this proceeding the original judgment was valid and subsisting, and that $2,318.81 was due thereon and unpaid. The court further found the bank indebted to Blanks in the sum of $1,836.16 on open account subject to garnishment, and further that said bank and Blanks "have in their joint control and possession a safety deposit box located in said bank in which are effects belonging to the defendant C. H. Blanks, to wit: the sum of Two Thousand Two Hundred Dollars ($2,200.00) of money."

The amount of the open account was awarded plaintiffs on the indebtedness, and as to a portion of the funds in the lock box, the court decreed that Blanks and garnishee "be and they and each of them are hereby commanded to deliver to the sheriff or any constable of Taylor County, Texas, presenting an execution, so much of the effects of the said C. H. Blanks so held by said bank * * * as shall be sufficient to make the further sum of $483.65, together with all costs herein accrued, for all of which the plaintiffs shall have their execution," etc.

The safety deposit box is such as is usual and customary in banks and is supervised and controlled in the same way. The bank employee in charge of defendant's box testified to the renting and the leasing of the same to Blanks; that all boxes in the bank had same type of locks and same system of getting into them; that the boxes were inside the bank vault; that when a customer rented a box he was given a key; that such customer cannot enter the vault and box without aid and permission of the bank; that there are two locks on each box, and the customer is given a key to one of the locks and the control key to the other lock is retained by the bank; that when the customer desires access to his box he makes application to some employee

of the bank and signs a card; that if he is entitled to get into the box, "we insert our key and he inserts his key and we open the door;" that if the customer loses his key he makes affidavit to that effect; that in his presence the bank has a locksmith destroy that lock and install one which the old key cannot be used to open.

Blanks himself testified in part, "The bank has the master key which controls the door to the vault in which the box reposes. The bank's key, in conjunction with my key, is necessary to open the door." He further testified that he had in the safety deposit box at that time $2,200 in cash.

From the above and other testimony the trial court found as a fact that there was in the joint possession of the bank and Blanks effects belonging to Blanks subject to execution, viz., $2,200 in money, and, following the statute, rendered a decree that garnishee and Blanks render to the proper official so much of the effects so held as was necessary to satisfy the judgment, the terms of which are reflected by the excerpts therefrom above set out.

█ The garnishment proceeding was in compliance with the statutes generally regulating the same, and especially Articles 4079, 4081, and 4089, R.C.S.1925, designed to reach defendant's effects then in the custody of the garnishee and which Blanks by his pleadings and testimony admitted he had in the safety deposit box. It is believed to be unnecessary to discuss at length the nature of such a proceeding in Texas. As stated in 20 T. J. p. 695, § 2: "Garnishment is a proceeding or process whereby the property, money or credits of one person (generally called the debtor) in the possession of or owing by another (generally designated the garnishee) are applied to the payment of the debt of the debtor by means of process issuing against the debtor and the garnishee. By this proceeding a debtor may be compelled to pay another than his creditor, and the right of the creditor is, against his will, transferred to another. The writ of garnishment is inquisitorial—given to ascertain the fact of liability of the garnishee to the defendant debtor or to ascertain whether he has effects in his hands belonging to the latter which may be reached and subjected to the payment of the latter's debt. * * *."

The proceeding is further analyzed in 20 T.J. p. 699, § 4, in this language: "It is in effect a suit by the defendant in the plaintiff's name against the garnishee, the pur-

886

pose and result of which are to subrogate the plaintiff to the right of the defendant against garnishee."

For other authorities setting forth the general principles involved, see Braddock v. Gambill, Tex.Civ.App., 291 S.W. 306; Cooper v. Decker, Tex.Civ.App., 21 S.W. 2d 70; Stanard v. Cantwell, Tex.Civ.App., 286 S.W. 760; Ward v. Hebbronville State Bank, Tex.Civ.App., 286 S.W. 345; Hall v. Nunn Electric Co., Tex.Civ.App., 183 S.W. 13; Medley v. American Radiator Co., 27 Tex.Civ.App. 384, 66 S.W. 86; 20 Tex.Jur. p. 800, §§ 75, 76.

■ In the light of the garnishee's answer, the plaintiff's reply thereto, and Blank's answer and admissions, all taken in connection with the inquisitorial nature of the proceeding and the testimony reflecting the presence of the "effects" in the box, we are of the opinion that the court's authority was fully invoked to make the disposition of the funds evidenced by the judgment, and that the court had under the statute ample jurisdiction to make application of Blanks' funds in the deposit box, or so much thereof as was necessary, to the satisfaction of the undisputed debt owned by him to plaintiffs.

We have found no direct authority in Texas dealing with the state of facts like those reflected in this record, but on the general principles announced in the authorities we believe our statutes fully warranted the proceedings taken and the judgment entered by the trial court.

For additional authorities from other jurisdictions, though statutes there involved are not available to us, see the following: Tillinghast, Trustee, v. Johnson, 34 R.I. 136, 82 A. 788, 41 L.R.A.,N.S., 764, Ann. Cas.1914A, 960. In principle, that opinion, stated to be in line with the weight of authority, supports our conclusions above announced. The notes or annotations following that opinion say:

"Thus, under statutes providing for reaching, by garnishment, personal property or effects, or goods, chattels, and credits of a debtor, in the possession or under the control of the garnishee, a bank or trust company may be garnished for the contents of a safe deposit box in its vaults, which is opened by the use of both a master key in the possession of the bank or trust company, and a private key in the possession of the defendant. Trowbridge v. Spinning, 23 Wash. 48, 62 P. 125, 54 L.R. A. 204, 83 Am.St.Rep. 806; Washington Loan & Trust Co. v. Susquehanna Coal Co., 26 App.D.C. 149."

"And it is immaterial that the bank has no knowledge of the contents of the box, where the statute further authorizes the court to determine, from the answer or otherwise, the effects under the control of the garnishee liable to execution. Trowbridge v. Spinning, supra."

■ We are aware that the garnishment law in Texas has been strictly construed, and that the extent of the garnishee's liability is measured by the provisions of the statute, Hatley v. West Texas Nat. Bank, Tex.Civ.App., 272 S.W. 571, but, after due consideration, we are of the opinion that the terms of the statute fully warranted the judgment.

Being of the opinion that the above questions are controlling and decisive of this appeal, the appellant's points under consideration are overruled and the judgment of the trial court is affirmed.

On Rehearing.

May 25, 1945, this court handed down the original opinion in the above cause affirming the judgment of the trial court. Appellant Blanks and appellees B. M. and O. E. Radford have each filed motions for rehearing. We have carefully considered the appellant's motion and are of the opinion the same should be overruled for the reasons stated in the former opinion and for the reasons following:

Appellees' motion for rehearing is to the effect that they are entitled to have the judgment affirmed on another and different ground from that approved in the original opinion. They now insist that regardless of whether there was or was not an affidavit filed in accordance with the provisions of Article 3775, Revised Statutes of 1925, that the trial court's judgment is, nevertheless, correct in that the alias execution of May 24, 1937, and pluries execution of September 30, 1937, were sufficient to keep the judgment (1625—B) against Blanks from becoming dormant or barred.

The controlling facts of this case have been substantially set forth in the original opinion, but those most pertinent to the issue now under consideration will be briefly summarized.

J. M. Radford obtained a judgment (1625—B) against Blanks November 15, 1932, and had an order of sale and execution issued thereon January 5, 1933, and due return was made February 10, 1933.

Said Radford died July 4, 1933, leaving a will disposing of his interest in the community estate of himself and wife. He gave one half of his interest in said estate to his wife, B. M. Radford, and the other half to O. E. Radford, his son. They are appellees herein.

The will was probated August 1, 1933, and in due time the independent executors provided for in the will qualified and thereafter completed their work as such. Their services ended December 18, 1935, at which time the beneficiaries under the will and the executors thereof filed in the Probate and Deed Records of Taylor County an instrument reciting disposition of certain properties in accordance with the will and setting forth that there was no necessity for further administration of the estate, since all debts, specific bequests, inheritance taxes, etc., had been paid off and provided for. From said December 18th and thereafter the beneficiaries, appellees herein, took control of the properties of the estate which the testator had willed and bequeathed to them. Such assets included the Blanks judgment.

Thus stood the record pertaining to that judgment until issuance of the alias and pluries executions of date, respectively, May 24 and September 30, 1937. After the issuance and due return of the alias and pluries executions, the record as to the judgment again remained unchanged and nothing was done in regard to it until the present garnishment proceeding of September 20, 1944, which, from the standpoint of appellees, was based on said judgment (1625—B) as then valid and subsisting and owned by B. M. and O. E. Radford, "who," the court finds, "were entitled to have such executions issue." The alias and pluries executions were issued at the instance and request of said beneficiaries, or their attorney for them. As reflected above, they had (by the will) become the equal owners of the J. M. Radford community interest in the judgment, along with other properties devised and bequeathed to them. (The other one-half of said community estate belonged at all times to the wife, B. M. Radford.) As pointed out, when the alias and pluries executions were issued, no administration of the estate of J. M. Radford was then pending and none was further necessary, since such administration of that estate had previously been terminated for such reasons on December 18, 1935, which, of course, was long prior to the date of the alias and pluries executions.

Based upon the foregoing facts, the trial court made the following conclusion of law: "From the foregoing facts, the court concluded, as a matter of law, that B. M. and O. E. Radford are the owners of the judgment rendered in cause No. 1625—B and have the right to bring this action. That the judgment rendered in cause No. 1625—B is alive, valid and subsisting. That said judgment was kept alive by the issuance of executions (alias and pleures) at the instance and in favor of the owners of the judgment, who were entitled to have such execution issue."

The instant garnishment proceeding was instituted September 20, 1944, and obviously the judgment against Blanks is barred if it has nothing to support it except the original order of sale and execution of date January 5, 1933. If that judgment be not barred, or be valid and subsisting, as of the date, September 20, 1944, it is so because of the issuance of said alias and pluries executions and their legal sufficiency to prevent the bar or dormancy of the same.

 Under the above facts the will of J. M. Radford and the probate thereof was a sufficient and complete mode of transferring and assigning to said beneficiaries all right, title and ownership of the uncollected Blanks judgment along with the other property covered by the will. Especially is this true since the administration provided for in the will had been consummated by the agreement of December 18, 1935, by virtue of which the independent executors delivered to said beneficiaries, and they acknowledged receipt thereof, of the properties, including Blanks judgment, which the testator had devised to them. Article 8282, Vernon's Ann.Civ. St. Thus the beneficiaries' right and ownership became complete in matters of disposition and was the same or analogous to that of an assignee of a judgment. The assignment of judgments, legal or equitable, by writing or by parole, is well recognized and upheld by the courts. McMillan v. Rutherford, Tex.Civ.App., 14 S.W.2d 132; Garvin v. Hall, 83 Tex. 295, 18 S. W. 731; 26 Tex.Jur. p. 449, § 593.

In the McMillan case the court said [14 S.W.2d 133]: " 'With respect to its assignable qualities, a judgment is governed by the rules applicable to other choses in action; and may be assigned by any person

888

and by any method competent and sufficient for the assignment of any other chose in action.' 2 Freeman on Judgments, p. 2187, § 1049."

The alias execution of May 24, 1937, carried the recital that the judgment formerly owned by J. M. Radford "is now owned by O. E. and B. M. Radford." The undisputed facts are to that effect. Their authority over the same is reflected by the rule of law stated in 18 T. J. p. 559, § 25, as follows: "The owner of the judgment— i. e., the plaintiff or his transferee—has exclusive control over its collection and is the only person entitled to call for the writ of execution." Citing Arthur v. Driver, 60 Tex.Civ.App. 100, 127 S.W. 891.

The text further states: "And where the writ is issued at the instance of a transferee of the judgment creditor, it should run in the name of the judgment creditor and not in that of the transferee, following the directions of the judgment." 18 Tex. Jur. p. 593, § 54.

█ Under the above facts B. M. and O. E. Radford, as the owners of the unsatisfied judgment against Blanks, held exclusive right of control and disposition of the same at the time they requested and procured the issuance of the alias and pluries executions. For such reasons the trial court evidently concluded that, "as a matter of law under the facts," the judgment was "alive, valid and subsisting" at the time this garnishment proceeding was instituted. The conclusion is believed to be sound and warranted by the evidence, which clearly demonstrates that the judgment against Blanks had not become dormant or barred.

█ The conclusions of the trial court that said executions were sufficient to prevent the dormancy of said judgment is sustained in principle by the following authorities: Grissom v. F. W. Heitmann, Tex. Civ.App., 130 S.W.2d 1054; Kingman Texas Implement Co. v. Borders, Tex.Civ. App., 156 S.W. 614; Norwood v. Orient Ins. Co., Tex.Civ.App., 44 S.W. 188; Cabell v. Orient Ins. Co., 22 Tex.Civ.App. 635, 55 S.W. 610; 26 Tex.Jur. p. 462, § 604; p. 399, § 553.

To the extent indicated, appellees' motion for rehearing is granted. For the reasons herein assigned, as well as those stated in the court's original opinion, the judgment of the trial court is affirmed. It is so ordered.